IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 5:23-cr-40029-HLT-1 |
| BYRAN OSHUN WALKER, | |
| Defendant. | |

## MEMORANDUM AND ORDER

Officers stopped a vehicle after observing a traffic violation. Defendant Byran Oshun Walker was the passenger. Officers detected the odor of marijuana and asked if there was any marijuana in the vehicle. Defendant admitted to having just swallowed part of a blunt. Officers ordered both men to exit the vehicle, and Defendant exited wearing a fanny pack ("bag") across his body. Officers checked for outstanding warrants and searched the vehicle and Defendant's bag. The vehicle search was fruitless, but officers recovered marijuana and a firearm from Defendant's bag. Officers also learned that Defendant had three misdemeanor warrants and arrested him. A grand jury charged Defendant with possession of a firearm by a prohibited person.

Defendant moves to suppress the firearm and argues the warrantless search of his bag violated the Fourth Amendment. The Court disagrees and denies the motion because the search of his bag was valid under the Fourth Amendment. The automobile exception justifies the search if the bag was a container apart from Defendant's person. The search-incident-to-arrest exception justifies the search if the bag was part of his person (or within his control). Further, even if the bag's search violated the Fourth Amendment, the Court would not suppress the firearm because officers would have inevitably discovered it.

**I.       BACKGROUND**[1]

Officers Tanner Stickelman and Alex Kuebler have been officers with the Topeka Police Department ("TPD") for about five years. Both men attended the TPD police academy for a six-month course and attend 48 hours of annual training. They were on patrol in a clearly marked police cruiser near 13th and Polk on January 4, 2023, around 4:25 p.m. Stickelman observed a red passenger vehicle with two occupants fail to signal 100 feet before turning. He decided to initiate a traffic stop and began following the vehicle. Stickelman and Kuebler detected the odor of marijuana as they followed the vehicle.

The vehicle pulled over. Stickelman and Kuebler exited their cruiser and approached the vehicle. Stickelman approached on the driver's side while Kuebler approached on the passenger's side. Defendant was sitting in the passenger seat and had a bag (i.e., fanny pack) with the pouch resting against his chest and the strap running over his right shoulder, across his back, and under his left arm. Stickelman observed that Defendant was not wearing a seatbelt and that the odor of marijuana was stronger.

Stickelman explained the reason for the stop and requested identification from the driver and then from Defendant. Stickelman asked whether there was "weed" in the vehicle, and Defendant admitted that there was a little "blunt"[2] that he had been smoking. Defendant also told officers that his nephew (the driver) did not smoke. Stickelman asked where the blunt was, and

---

[1] The Court held an evidentiary hearing and oral argument on April 24, 2024. The Court received Government Exhibits 1-2 and Defense Exhibit A as well as the testimony of Topeka Police Department Officers Tanner Stickelman and Alex Kuebler. The Court credits the testimony of both witnesses after observing them in the courtroom. Both witnesses testified consistently with the videos in Government Exhibit 1 on relevant points, thoughtfully answered questions, maintained eye contract throughout questioning, and admitted mistakes in their conduct. The Court's factual findings are outlined in this section or included throughout the order as necessary.

[2] A "blunt" is marijuana contained in a tobacco wrapper.

Defendant said it was in his mouth, and he had been trying to eat it. Stickelman asked both men to step out of the vehicle. Defendant exited with the bag still across his body.

Stickelman patted down the driver for weapons and told him to sit on the curb. Kuebler patted down Defendant and asked Defendant whether he had any weapons on him. Defendant stated that he did not. Kuebler told him to sit on the curb. Neither the driver nor Defendant was handcuffed or physically restrained while seated. Stickelman then ran the names on Defendant's and the driver's IDs through dispatch. Kuebler began to search the vehicle.

Stickelman stood behind the vehicle and talked with Defendant and the driver while he waited for the return from dispatch. Stickelman asked to see Defendant's bag during the conversation, and Defendant hesitated. Stickelman again asked to see the bag, and Defendant again hesitated. Stickelman then told Defendant that he did not care if there was "weed" in the bag, and Defendant admitted there was a "little weed" in it. Stickelman asked to see the bag. Stickelman told Defendant he was not going to charge Defendant for the marijuana but needed to take it from him. Defendant removed the bag and handed it to Stickelman.

Stickelman placed the bag on the vehicle's trunk, opened the bag, and recovered a bag of marijuana and a small firearm loaded with 0.9 mm ammunition. Stickelman removed the firearm's magazine and cleared the chambered round. Stickelman asked whether Defendant had warrants, and Defendant responded, "I don't think so." Stickelman then requested a Triple I on Defendant and told Defendant he was showing some misdemeanor warrants. Stickelman then asked Defendant to stand up because Stickelman had to arrest him. Kuebler meanwhile ran the serial number on the firearm.

Stickelman handcuffed Defendant and searched his person. Stickelman removed a cellphone and a lanyard with keys and allowed the driver to take both items.[3] Kuebler then asked Defendant about an item in the bag, and Stickelman said, "I haven't finished searching it yet." Kuebler then searched the rest of Defendant's bag and put it in the police cruiser. Stickelman asked Defendant whether he wanted the firearm to go with the driver if Defendant turned out to not be prohibited from possessing a firearm, and Defendant said yes. Stickelman asked the driver for his age, and the driver said he was 19 years old. Stickelman then seated Defendant in the backseat of the cruiser.

Stickelman asked Kuebler about the vehicle search. Kuebler indicated he did not find anything and did not search the backseat because it was full of clothes. Stickelman returned to the vehicle, did another brief search, asked the driver a few questions, and told the driver he could go. Stickelman returned to the cruiser, and the Triple I came back showing that Defendant was prohibited. A grand jury subsequently returned an indictment charging Defendant with a violation of 18 U.S.C. § 922(g). Defendant now moves to suppress the firearm.

## II.   ANALYSIS

Defendant moves to suppress the firearm because the warrantless search of his bag violated his Fourth Amendment rights. The government argues that the search is valid under the Fourth Amendment's automobile exception because Defendant's bag was a container or "passenger belonging" and not part of Defendant's person. The government alternatively argues that the search-incident-to-arrest exception validates the search even if the bag was part of Defendant's person. And, failing either the automobile or search-incident-to-arrest exceptions, the government

---

[3]   There was some discussion at the hearing about the cellphone. The video shows Stickelman remove the cellphone from Defendant's pocket and place it on the trunk. Kuebler's video then shows the driver taking the cellphone.

contends that suppression is not warranted because the officers would have inevitably discovered the firearm.

The overarching dispute between the parties is whether Defendant's bag <u>was</u> or <u>was not</u> part of his person. Defendant initially argues the bag <u>was</u> part of his person and thus not subject to search under the automobile exception. Defendant then pivots and argues the bag <u>was not</u> part of his person and therefore not subject to a search incident to arrest. Defendant does not explain how both can be true. And it seems the character of the bag would be constant over the course of the encounter on these facts regardless of the exception at issue. But the Court need not analyze this issue in depth because the search of the bag is valid no matter how the bag is ultimately characterized.[4]

### A.     Assuming the Bag Was a Container and <u>Was Not</u> Part of Defendant's Person.

The Court starts with the government's initial argument, namely that the search of Defendant's bag is valid under the Fourth Amendment's automobile exception because it was a mere passenger belonging or container and <u>was not</u> part of Defendant's person. This well-understood exception allows officers to search an automobile without a warrant when there is

---

[4]  Defendant essentially presents three different tests for whether the bag is part of his person. In the automobile exception context, he relies on Justice Breyer's concurrence in *Wyoming v. Houghton*, 526 U.S. 295 (1999), and a Maryland state appellate court opinion in *State v. Funkhouser*, 782 A.2d 387 (Md.App. 2001). In Justice Breyer's concurrence in *Houghton*, the "special" status of a container like a purse or a wallet plus the defendant's attachment to the object may be enough to make such a container part of the defendant's person. *See Houghton*, 506 U.S. at 307-08 (Breyer, J., concurring). The rule that emerges from *Funkhouser* is <u>slightly</u> different and seems to turn only on physical attachment. *Funkhouser*, 782 A.2d at 398-99. Defendant thus argues that under these tests, the bag <u>was</u> part of his person for purposes of the automobile exception.

Defendant then argues the bag <u>was not</u> part of his person for the search incident to his arrest and advances a different test. *United States v. Knapp* says that physical contact alone is not enough for something to be part of a person. 917 F.3d 1161, 1166 n.3 (10th Cir. 2019). The item also shouldn't be readily separable from the person. Rather, it needs to be a part of, within, or concealed under the defendant's clothing. *Id.* at 1167. *Knapp*'s discussion of what is "of the person" is undergirded in part by the specific policy rationales justifying the search-incident-to-arrest exception. *See id.* at 1166-68. Relying on *Knapp*, Defendant argues that his bag was not part of his person because—even before Stickelman took it from him to search—it was worn loosely around his body, it was not concealed, and was thus not part of his clothing. *See* Doc. 24 at 16.

probable cause to believe the automobile contains evidence of criminal activity. *Houghton*, 526 U.S. at 301-02. This exception allows officers to search any containers or belongings in the vehicle (regardless of ownership) that may conceal the object of the search. *Id.* But this exception generally does not authorize the officer to search the persons of the occupants therein. *See id.* at 303.

The government argues Defendant's bag was a mere container or personal belonging that could have concealed the object of the search (e.g., marijuana) and was therefore searchable under the automobile exception even though the bag was outside the vehicle. If the government is correct that Defendant's bag was not part of his person, then the Court agrees that the automobile exception applies, and Stickelman's warrantless search of Defendant's bag did not violate the Fourth Amendment. *See United States v. Davis*, 576 F. App'x. 292, 294 (4th Cir. 2014) (holding a bag the defendant had placed outside a vehicle could be searched under the automobile exception because it had been inside the vehicle when probable cause to search the vehicle arose).

### B.     Assuming the Bag Was Part of Defendant's Person.

The Court turns to the government's alternative arguments, which all assume the bag was part of Defendant's person. The government first argues that the search was valid under the Fourth Amendment as a search incident to arrest for marijuana possession. The government next argues suppression remains inappropriate even if the search can't be justified because officers would have inevitably discovered the firearm as part of a search incident to his arrest on the warrants. The Court agrees on both points.

#### 1.     Search incident to arrest.

The government argues Stickelman's search of Defendant's bag was valid as a search incident to arrest for marijuana possession. The search-incident-to-arrest exception is based on the needs of arresting officers to ensure their safety by disarming arrestees and to preserve evidence that might be destroyed. *Knapp*, 917 F.3d at 1165. The exception allows an arresting officer to

search a defendant's person and the area within his immediate control. *Id.* The officer can search a defendant incident to an arrest when the officer knows facts giving him probable cause to arrest the defendant for any crime. *United States v. Sanchez*, 555 F.3d 910, 922 (10th Cir. 2009).

Defendant principally argues that this exception does not apply because Stickelman did not arrest him for marijuana possession. Defendant relies on *Knowles v. Iowa*, 525 U.S. 113 (1998), and argues that the absence of an actual arrest for marijuana possession means that this exception can't justify the search. But the Court reads *Knowles* differently and understands *Knowles* to simply hold that the search-incident-to-arrest exception does not extend to situations where an individual could have been arrested for a crime but instead was issued a citation. *See id.* 116-19. *Knowles* makes clear that an arrest must take place at some point during the encounter. *Id.* But *Knowles* does not disturb the rule that a search incident to an arrest can occur before the arrest. Nor does this Court read *Knowles* to hold that the exception is unavailable when an officer has probable cause for one crime, searches, and ultimately arrests the defendant for another crime. This Court's understanding of *Knowles* is consistent with subsequent Tenth Circuit cases that hold that a valid search incident to an arrest does not need to be based on the crime for which the defendant is ultimately arrested or charged. *Sanchez*, 555 F.3d at 922; *United States v. Turner*, 553 F.3d 1337, 1344-45 (10th Cir. 2009); *United States v. Torres-Castro*, 470 F.3d 992, 997-98 (10th Cir. 2006).

The Court appreciates the apparent breadth of this exception. But this breadth is due in part to the fact that probable cause to support a search incident to arrest is measured against a "purely objective standard and can be for <u>any crime</u>, not merely that for which the defendant is ultimately charged." *Sanchez*, 555 F.3d at 922 (citations and quotation marks omitted); *Turner*, 553 F.3d at 1345 (explaining that the officer's subjective intent can't be used to invalidate an otherwise

legitimate arrest and the proper inquiry is "whether the facts known to the arresting officer give probable cause to arrest" (internal quotation omitted)). This plus the fact that the search can precede the arrest means that an officer does not have to intend to arrest the defendant when the search is conducted so long as a reasonable officer would have had probable cause to arrest the defendant for some crime and an arrest follows shortly after the search. *See Sanchez,* 555 F.3d at 922; *see also, e.g., United States v. Kazadi*, 2020 WL 3415396, at *4 (D. Colo. 2020) (upholding search because the defendant's resistance to the officer's frisk gave a reasonable officer a basis to arrest the defendant for obstructing a peace officer).

The upshot is that a court evaluating this exception initially asks whether the facts known to the searching officer would have given an objectively reasonable officer probable cause to arrest the defendant for <u>some</u> crime at the time the defendant was searched, and, if so, whether an arrest followed shortly thereafter. *Torres-Castro*, 470 F.3d at 998. Here, this standard is met. Stickelman had probable cause to believe Defendant had violated Kansas's prohibition on possessing marijuana based on facts known to him at the time he searched Defendant's bag (e.g., the odor of marijuana emanating from the vehicle and Defendant's admission to smoking marijuana and swallowing the blunt).[5] Stickelman searched the bag and then arrested Defendant shortly thereafter for his outstanding warrants.

This conclusion does not necessarily end the search-incident-to-arrest analysis because the authority to search under this exception is limited to a defendant's person and anything in the area around the defendant he might access. *Knapp*, 917 F.3d at 1165.[6] Searches of the defendant's

---

[5] The Court recognizes that Stickelman lacked subjective intent to arrest Defendant for marijuana possession at the time of the search, but as explained, Stickelman's subjective intent is immaterial.

[6] The Court notes that the testimony at the evidentiary hearing suggests training on the doctrine's constitutional limits would be prudent.

person are unqualifiedly permitted whereas searches of the area to which the defendant might gain access are assessed on a case-by-case basis. *Id.* at 1165-66. Factors employed in the case-by-case assessment include: "(1) whether the arrestee is handcuffed; (2) the relative number of arrestees and officers present; (3) the relative positions of the arrestees, officers, and the place to be searched; and (4) the ease or difficulty with which the arrestee could gain access to the searched area." *Id.* at 1168-69.

Stickelman's search of Defendant's bag fell within his authority to conduct a search incident to arrest. The search of the bag is valid if it was part of Defendant's person because the ability to search Defendant's person incident to an arrest is unqualified. *Id.* at 1165. Alternatively, the search of the bag is valid if it was not part of Defendant's person because the Court finds that it remained in an area within Defendant's immediate control. First, neither Defendant nor the driver was handcuffed or physically restrained. Second, there was an equal number of detainees and officers on site. Third, Stickelman and Defendant appear to have remained little more than an arm's length of one another after Defendant handed his bag to Stickelman. Fourth, apart from Stickelman, there was virtually no obstacle that would have prevented Defendant from gaining access to the bag had he tried. No physical barriers stood in Defendant's way, and Stickelman and Defendant are roughly equal sized. And Kuebler stood on the driver's side of the vehicle. The Court finds that the search-incident-to-arrest exception justifies the search.

### 2. Inevitable discovery.

The government argues the inevitable discovery doctrine offers an additional basis for denying Defendant's motion to suppress even if the search was not justified by an exception. The government explains that officers would have inevitably discovered the firearm as a search incident to Defendant's arrest for his outstanding warrants.

The inevitable discovery doctrine is an exception to the exclusionary rule and asks whether the prosecution can establish by a preponderance of the evidence that the information in question would have been discovered by lawful means. *Utah v. Strieff*, 579 U.S. 232, 237-38 (2016); *Nix v. Williams*, 467 U.S. 431, 444 (1984); *United States v. White*, 326 F.3d 1135, 1138 (10th Cir. 2003). The doctrine recognizes that suppression is a costly remedy and is only appropriate where the deterrence benefits outweigh the societal costs. *Strieff*, 579 U.S. at 237-38.

The Court finds that the government has proven by a preponderance of the evidence that officers would have ultimately discovered the firearm as a search incident to Defendant's arrest on his outstanding warrants.[7] Stickelman got Defendant's identification and ran his name (and the driver's) through dispatch while Defendant and the driver sat on the curb (notably, this investigation began <u>before</u> the allegedly unconstitutional search of his bag). Dispatch returned three outstanding warrants for Defendant. Stickelman testified that TPD policy required him to confirm the warrants once he learned some existed. Dispatch confirmed three misdemeanor warrants for Defendant. Stickelman testified that he had to arrest Defendant after the warrants were confirmed. *See Strieff*, 579 U.S. at 240 (recognizing that a warrant is a judicial mandate and that an officer has a sworn duty to carry out its provisions). Stickelman thus would have inevitably

---

[7] Defendant challenges whether the officers would have arrested him just for the warrants. Putting aside the unequivocal and credible testimony of both officers that they would have arrested Defendant on these warrants, the Axon body camera footage indicates the warrants are in fact the reason for Defendant's arrest. The video shows that Stickelman arrested Defendant almost immediately after learning of the warrants. He also asks Defendant and the driver about whether Defendant was prohibited from having a firearm and, if not prohibited, whether Defendant wanted the driver to leave with the firearm. This line of questioning indicates that Defendant would have remained under arrest for the warrants even if not prohibited from possessing a firearm. Defendant also questions whether the officers would have released Defendant's bag to the driver without searching it. The Court finds the officers would not have released the bag without searching it. The driver never asked to take the bag. Officers never offered to let him take the bag. And both officers credibly testified that they would not have given the driver the bag without searching it.

arrested Defendant and, as discussed above, would have inevitably searched the bag for officer safety either as part of Defendant's person or as an item within his control incident to his arrest.[8]

## III.   CONCLUSION

The Court carefully analyzed the various arguments and finds that Stickelman did not violate the Fourth Amendment when he searched Defendant's bag. And, even if he did, officers would have inevitably discovered the firearm by lawful means. The Court thus denies the motion.

THE COURT THEREFORE ORDERS that Defendant's motion (Doc. 18) is denied.

IT IS SO ORDERED.

Dated: May 9, 2024                           /s/ *Holly L. Teeter*
                                             HOLLY L. TEETER
                                             UNITED STATES DISTRICT JUDGE

---

[8] This exception requires the Court to assume the constitutional violation did not occur. Thus, Defendant (still wearing the bag) and the driver would have been sitting on the curb when Stickelman learned of the warrants and arrested Defendant. The bag was either part of Defendant's person (as he argues to defeat the automobile exception) or it was in his control (not handcuffed, in close proximity, equally numbered, no barriers, etc.).